FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

2011 MAR 15 P 4: 11

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

CALLAWAY GOLF COMPANY,
    2180 Rutherford Road
    Carlsbad, CA  92008
                      Plaintiff,

    v.

DAVID J. KAPPOS, Under Secretary Of Commerce
For Intellectual Property And Director Of The
United States Patent And Trademark Office,

UNITED STATES PATENT AND TRADEMARK
OFFICE, and

THE UNITED STATES,

    SERVE:
    Neil H. MacBride, United States Attorney
    Justin W. Williams U.S. Attorney's Building
    2100 Jamieson Avenue
    Alexandria, VA  22314

    COPY:
    The Honorable Eric H. Holder, Jr.,
    Attorney General of the United States
    United States Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, DC  20530

    David Kappos, Director
    United States Patent and Trademark Office
    600 Dulany Street
    Madison West Building, 10th Floor (10D44)
    Alexandria, VA  22314
                     Defendants.

Civil Action No. *1: 11 cv 266
LmB /TCB*

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Because agency action threatens to deprive Plaintiff Callaway Golf Company ("Callaway Golf" or "Plaintiff") of substantial intellectual property rights in a manner contrary to law, and cause irreparable injury to Callaway Golf, ***expedited treatment of this action is respectfully***

*requested.* This action stems from the Acushnet Company's ("Acushnet") breach of a binding court-ordered settlement agreement by initiating, and actively participating in, the *inter partes* reexamination of four of Callaway Golf's patents before the United States Patent and Trademark Office ("PTO"). *See* Settlement Agreement (attached as Ex. A and incorporated herein).

In 2007, the United States District Court for the District of Delaware held that Acushnet's actions with respect to the *inter partes* reexaminations are in breach of a court-ordered Settlement Agreement. *See Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091, Mem. Op. at 23-29 (D. Del. Nov. 20, 2007) (attached as Ex. B and incorporated herein). As recently as January 2011, the District Court confirmed that Acushnet engaged in "lamentable behavior" in an effort to avoid the ramifications of the court's ruling. *See Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091, Mem. Op. at 8 (D. Del. Jan. 13, 2011) (attached as Ex. C and incorporated herein). In particular, the District Court has condemned Acushnet's "gamesmanship" in evading the forum selection provisions of the Settlement Agreement and attempting to stymie enforcement of the District Court's ruling. *See Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091, Mem. Op. at 13 (D. Del. Nov. 10, 2008) (attached as Ex. D and incorporated herein).

The PTO has simply ignored the Settlement Agreement and the District Court's ruling that Acushnet's participation before the PTO breaches that Agreement. *See, e.g.*, Decision on Petitions (March 9, 2011) (attached as Ex. E and incorporated herein). In fact, in its most recent decision, the PTO refused to even address the ramifications of the District Court's ruling, instead relying entirely upon its prior decisions to initiate and continue the *inter partes* reexaminations— even though the reasoning of those prior decisions has been undermined in significant part by the District Court's ruling. *Id.* The PTO thereby confirmed its position that it may not only ignore a

court-ordered Settlement Agreement, but may also disregard a district court ruling that the Agreement has been breached.

The plain language of the Patent Act, Federal Circuit precedent regarding the binding nature of settlement agreements, the agency's own rules, and elementary principles of collateral estoppel, are all to the contrary. The PTO had a legal duty to dismiss Acushnet's unlawful requests for *inter partes* reexaminations and committed several clear errors of law in initiating and refusing to vacate these proceedings—errors that this Court has a duty to correct under the Administrative Procedure Act. Absent the intervention of this Court, the PTO's action will: (i) render settlement agreements a nullity in the patent area; (ii) encourage disrespect for the orders of the district courts; and (iii) result in duplicative litigation and conflicting rulings as between the PTO and the federal courts. These errors have been compounded because the PTO has not only allowed Acushnet to continue to participate in the proceedings before it, but the PTO itself relied heavily on hindsight "evidence" created by Acushnet's lawyers to invalidate the patents, *thus ratifying and capitalizing on Acushnet's ongoing breach of the Settlement Agreement.*

Callaway Golf, by and through its undersigned attorneys, therefore, brings this action for declaratory and injunctive relief to seek redress for the decisions of Defendants David J. Kappos, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, the United States Patent and Trademark Office, and the United States (collectively, "PTO" or "Defendants") to institute and continue *inter partes* reexaminations of four patents owned by Callaway Golf in clear violation of a binding settlement agreement entered by a federal district court. As and for its Complaint against Defendants, Callaway Golf alleges and states as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      This is an action for judicial review of agency action under the Administrative Procedure Act. The questions presented are pure issues of law and the record is limited to that before the agency itself.

2.      The PTO is conducting *inter partes* reexaminations of four patents owned by Callaway Golf. These *inter partes* reexaminations, which could result in the loss of Callaway Golf's valuable intellectual property rights, are the direct result of four *inter partes* reexamination requests filed by Acushnet in breach of a court-ordered settlement agreement. *See* Ex. A. The Settlement Agreement provides that Callaway Golf and Acushnet will resolve all disputes over intellectual property by means of mediation and, if necessary, litigation before the federal district court in the District of Delaware. The Agreement expressly provides that should mediation fail to resolve the dispute, "either party may initiate legal proceedings in the United States District Court for the District of Delaware, and no other. Said court retains jurisdiction of the parties for such purposes." *Id.* § 19.6.

3.      Acushnet followed the process set forth in the Settlement Agreement for approximately eighteen months, participating in a non-binding mediation with Callaway Golf presided over by Magistrate Judge Thynge of the District Court for the District of Delaware and demanding documents from Callaway Golf under a specific provision of the Settlement Agreement. *See id.* §§ 19.5, 19.6. After starting to participate in the contractually required process, Acushnet abruptly abandoned the mediation and filed requests with the PTO for *inter partes* reexamination of four of Callaway Golf's patents on golf ball technology. Callaway Golf then filed suit against Acushnet for patent infringement on February 9, 2006. On November 27, 2006, Callaway Golf amended its Complaint to add a claim for breach of contract.

4.      For over four years since Acushnet initiated the *inter partes* reexaminations in breach of the Settlement Agreement, and notwithstanding that (as explained below) Callaway Golf has repeatedly brought the breach to the attention of the PTO and sought, on that basis, to halt the proceedings, the PTO has disregarded Acushnet's breach and has accepted Acushnet's active participation in the proceedings, thereby facilitating and condoning Acushnet's ongoing violation of the Settlement Agreement. Indeed, even after the United States District Court for the District of Delaware held that Acushnet's requests for these *inter partes* reexaminations violated the terms of the court-ordered Settlement Agreement, the PTO maintained that the *inter partes* reexaminations could continue unabated with Acushnet's full participation. *See* Ex. E.

5.      The PTO has consistently taken the position that Acushnet's breach of the Settlement Agreement is *irrelevant* and has no legal consequence. *See* Decision on Petition To Vacate Order Granting Reexamination (June 7, 2006) (attached as Ex. F and incorporated herein); Decision Denying Petition for Reconsideration and Returning Improper Paper (Sept. 7, 2006) (attached as Ex. G and incorporated herein). According to the PTO, it is statutorily obligated to continue the *inter partes* reexaminations, with Acushnet as a participant, even if it means that the PTO endorses Acushnet's participation in continuing violation of the Settlement Agreement. The PTO also has taken the position that it is not bound by the District Court's ruling that the Settlement Agreement is valid and that Acushnet is in violation of that agreement. *See* Decision on Request to Reschedule Hearing (Jan. 6, 2011) (attached as Ex. H and incorporated herein); Decision on Petition (Jan. 18, 2011) (attached as Ex. I and incorporated herein). Both of those legal conclusions are embodied in the most recent PTO Order which denied Callaway Golf's petition to vacate the *inter partes* reexaminations and, thereby, condoned Acushnet's continued participation in those proceedings. *See* Ex. E at 3.

6.      The PTO's ultimate decision and its orders of March 9, 2011, January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006 are arbitrary, capricious, an abuse of discretion, and otherwise contrary to law within the meaning of the Administrative Procedure Act, *see* 5 U.S.C. § 706(2)(A), and must be set aside by this Court. First, the PTO's conclusions are directly contrary to binding Federal Circuit precedent establishing that settlement agreements are in the public interest in patent litigation and that they must be rigorously enforced. *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323, 1333 (Fed. Cir. 2008) ("[T]here is a long-standing policy in the law in favor of settlements, [which] extends to patent infringement litigation."); *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1370 (Fed. Cir. 2001) ("Settlement agreements must be enforced if they are to remain effective as a means for resolving legal disagreements."); *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) (To allow a party to "escape its obligation under the settlement [agreement] would seriously decrease the willingness of parties to settle litigation on mutually agreeable terms and thus weaken the efficacy of settlements generally.").

7.      Second, the PTO ignored that a district court has already adjudicated the issue of the validity of the Settlement Agreement and its breach by Acushnet between these very parties. The PTO takes the position that because it was not a party to the Settlement Agreement, it was not "bound" by the District Court's ruling. This was legal error. The District Court's ruling had collateral estoppel effect on the PTO just as it would have on another federal district court. "Judicial precedent is as binding on [the PTO] as are statutes." *Koninklijke Philips Elecs. N.V. v. Cardiac Science Operating Co.*, 590 F.3d 1326, 1337 (Fed. Cir. 2010) (citation omitted). Under the PTO's view of the law, parties can litigate non-validity issues once in the district court and then—if unhappy with (or fearful of) the result—take a second bite at the same apple in the PTO.

8.     Third, the PTO erred in sanctioning Acushnet's active participation in the reexaminations as a third-party requester.  Even if the PTO did have discretion to continue the reexaminations in some form (which it did not), it cannot ratify an ongoing breach of the Settlement Agreement by endorsing (indeed relying on) Acushnet's continuing participation. Certainly no later than when it was made aware of the District Court's binding ruling, the PTO should have barred Acushnet from any further participation and stricken all of Acushnet's previous submissions from the record.  If the reexaminations were to continue, it should have been on an *ex parte* basis with only Callaway Golf and the Patent Office participating.  Under PTO rules, "*[e]x parte* proceedings preclude the introduction of arguments and issues by the third party requester." Manual of Patent Examining Procedure ("MPEP") § 2254.  Simply put, under its own procedures, if indeed it was obligated to continue with these reexaminations, at minimum the PTO was obligated to convert them to *ex parte* reexaminations and terminate Acushnet's participation.  Having failed to do so at the outset, the PTO fatally infected the entire proceeding.

9.     Finally, the PTO should have stayed these reexaminations in favor of the ongoing litigation involving the same patents before the District Court in Delaware.  Indeed, the validity of these patents has been the subject of an incredible consumption of judicial resources—two jury trials in the District Court, an appeal to the Federal Circuit, and a motion challenging the second jury verdict, which is now pending.  In these circumstances, where the judicial forum the parties selected has invested years in the question of the validity of these same four patents, the PTO should have stayed its hand.

## THE PARTIES

10.     Plaintiff Callaway Golf is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Carlsbad, California.  Callaway

Golf is the owner, by assignment, of United States Patent Nos. 6,210,293, 6,503,156, 6,506,130, and 6,595,873 ("the '293, '156, '130, and '873 patents," respectively, or the "Sullivan patents," collectively). Callaway Golf participated in the proceedings before the PTO that led to the PTO Orders of March 9, 2011, January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006. Callaway Golf is a "person suffering legal wrong because of agency action," and is "adversely affected or aggrieved by agency action within the meaning" of the Patent Act, 35 U.S.C. § 1. Callaway Golf is thus a proper plaintiff under the Administrative Procedure Act, 5 U.S.C. § 702.

11.     Defendant David J. Kappos is the Under Secretary of Commerce for Intellectual Property and the Director of the United States Patent and Trademark Office. Mr. Kappos is sued in his official capacity as Director of the United States Patent and Trademark Office. Defendant United States Patent and Trademark Office is a federal agency within the United States Department of Commerce that is headquartered in Alexandria, Virginia. Defendant United States of America is named as a nominal defendant pursuant to 5 U.S.C. § 702. The Defendants are all an agency of the United States or an officer or employee of an agency of the United States and have acted or failed to act in an official capacity and under color of legal authority. 5 U.S.C. § 702. They are thus proper defendants under the Administrative Procedure Act.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this is a civil action arising under the laws of the United States and relating to patents, including the United States Patent Act, 35 U.S.C. §§ 1 *et seq.*, and is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. This Court thus has jurisdiction to review the PTO Orders of March 9, 2011, January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006.

13.     This Court has authority to order declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 because there is a live controversy between Plaintiff and Defendants that includes a dispute over whether the PTO's decision to initiate and continue these *inter partes* reexaminations of Plaintiff's patents is consistent with federal law.  This Court has authority to issue a Writ of Mandamus under 28 U.S.C. § 1361 because Callaway Golf seeks a Writ requiring Defendants to comply with the Administrative Procedure Act, 5 U.S.C. §§ 701-706 and the United States Patent Act, 35 U.S.C. §§ 1 *et seq*.

14.     This Court has authority to review the PTO's Orders under 5 U.S.C. § 704.  *See Johnson v. Jones*, 515 U.S. 304, 310 (1995); *see also In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995); *Carolina Power & Light Co. v. United States Dep't of Labor*, 43 F.3d 912, 916 (4th Cir. 1995).  This Court also has jurisdiction to review the PTO's Orders because the PTO acted beyond its statutory authority when it decided to conduct, and continue, the *inter partes* reexaminations of the Sullivan patents.  *See* 5 U.S.C. § 706.

15.     Venue is proper in this District because Director Kappos and the PTO reside in the Eastern District of Virginia and because a substantial part of the events giving rise to the claims herein occurred within this judicial district.  *See* 28 U.S.C. § 1391(e).  Venue is proper in this Division because Director Kappos and the PTO reside in the Alexandria Division.  *See* Local Civ. R. 3(C).

## BACKGROUND

### The 1996 Settlement Agreement

16.     In 1996, Acushnet and Callaway Golf's predecessor-in-interest, Spalding Sports Worldwide, Inc., settled a major patent infringement action by entering into a Settlement Agreement, which "is binding upon the parties hereto . . . as well as their representatives, successors, transferees and assigns."  *See* Ex. A § 15.

17. The parties entered the Settlement Agreement with the "desire to: (i) settle their present disputes relating to the manufacture, sale and advertising of golf balls as aforesaid; (ii) avoid other and similar patent disputes; and (iii) strengthen the procedure for attempting to resolve expeditiously such new intellectual property and advertising disputes as may arise between them." *Id.* § G.

18. The Settlement Agreement requires that the parties follow a particular dispute resolution process with respect to patent disputes involving the "business of and the technology used in making, using and selling golf balls." *Id.* § 1.2, 9.1. Specifically, the Agreement states that "[a]ny dispute arising out of or relating to patents, including the above mentioned patents, other intellectual property owned or controlled by the parties, or claims relating to advertising shall be resolved in accordance with the procedures specified in this Section, which shall be the sole and exclusive procedure for the resolution of any such disputes." *Id.* § 19.1.

19. The Settlement Agreement requires that any dispute involving golf ball patents first be submitted to a multi-step alternative dispute resolution process, which includes "negotiation between executives who have authority to settle the controversy," *id.* §§ 19.2-19.4, "non-binding mediation under the then current CPR Model Mediation Procedure for Business Disputes," *id.* § 19.5, and mediation before a Magistrate Judge in the United States District Court for the District of Delaware, *id.* § 19.6.

20. Then, "[a]t the conclusion of a referral to the Magistrate or other judge as set forth in 19.6, should the dispute remain unresolved," the Agreement states that "either party may initiate legal proceedings in the United States District Court for the District of Delaware, and no other. Said court retains jurisdiction of the parties for such purposes." *Id.* § 19.7 (emphasis added).

21.     Acushnet and Callaway Golf's predecessor-in-interest incorporated the terms and conditions of the Settlement Agreement into their Federal Rule of Civil Procedure 41 Stipulations of Dismissal in two cases then pending in the United States District Court for the District of Delaware, *Spalding & Evenflo Companies, Inc. v. Acushnet Company*, Civil No. 96-73 (D. Del.), and *Acushnet Company v. Spalding and Evenflo Companies, Inc.*, Civil No. 96-78 (D. Del.).     The Stipulations of Dismissal stated that the District Court for the District of Delaware "shall retain jurisdiction to resolve any and all disputes arising out of the Settlement Agreement in accordance with the terms of the Settlement Agreement." *See* Stipulations of Dismissal, Civ. Nos. 96-73 and 96-78 (D. Del.) (attached as Ex. J and incorporated herein). In August 1996, the Stipulations were filed with the District Court and the cases were closed.

### Callaway Golf's Patents

22.     Callaway Golf acquired the Sullivan patents when it purchased the intellectual property and other golf assets of The Top-Flite Golf Company, previously known as Spalding Sports Worldwide, Inc. The Sullivan patents disclose technological breakthroughs relating to golf ball construction. In general, they disclose the combination of a large solid core surrounded by a firm low acid or low acid blend ionomer mantle and a very soft thin polyurethane outer cover layer—with specifically defined limitations for the layers, including flexural modulus, thickness and/or hardness.     The result of this patented golf ball construction is golf ball performance that had previously eluded the industry despite decades of experimentation with other constructions.

23.     For decades, many professional golfers used a "wound" golf ball (a cover over windings surrounding a small core).     Within two years of commercial introduction of the patented technology, and to the surprise of Acushnet, the vast majority of professional golfers on the PGA Tour had switched from the traditional wound golf balls to golf balls incorporating the

claimed technology. Acushnet, which had made wound golf balls from its beginning in the 1930s, completely stopped manufacture of all wound golf balls within two years of the commercial introduction of the patented technology. Golf balls with the patented technology have shown superior performance, including longer distance off the tee combined with better feel, control, and spin around the greens as compared to prior art golf balls.

24.     Callaway Golf has sold golf balls embodying the construction disclosed in the Sullivan patents, including the Callaway Golf® Rule 35®, CTU 30 and Callaway Golf® HX® series of golf balls.

### Acushnet's Infringing Golf Balls

25.     The Acushnet Company ("Acushnet") makes and sells golf balls under the Titleist® brand, including the Titleist Pro V1®, Titleist Pro V1* (discontinued), and Titleist Pro V1x™ (collectively, the "Pro V1 balls").

26.     Acushnet admitted, in a stipulation filed before trial in the litigation referenced above, that at least the Pro V1 balls sold prior to December 2007 infringe one or more claims of each of the Sullivan patents.

27.     Acushnet touts the Pro V1 balls as the best selling golf balls of all time, the "#1 ball in golf," and "The #1 Ball on Worldwide Tours."

28.     Acushnet has had great commercial success selling the infringing Pro V1 balls. As of late 2007, it had sold over 1.5 billion dollars' worth of infringing Pro V1 balls since their introduction to the market in October of 2000. According to trial testimony, by the end of 2007, Acushnet estimated sales of approximately 50 million dozen Pro V1 golf balls worldwide.

### Availability of Reexamination Proceedings At The PTO

29.     This Complaint involves questions about the interplay of the Settlement Agreement's dispute resolution provisions, the interpretation and application of those provisions

by the federal district court in light of one party's judicially determined breach, and four *inter partes* reexaminations at the PTO.

30.     There are two statutorily authorized types of reexamination proceedings at the PTO: *ex parte* reexaminations pursuant to 35 U.S.C. §§ 301-07, and *inter partes* reexaminations pursuant to 35 U.S.C. §§ 311-18.   Each type of proceeding provides, in appropriate circumstances, for the reexamination of a patent during its period of enforceability under the procedures established for the initial examination of a claim for a patent. *See* 35 U.S.C. §§ 305, 314.  The PTO contends that reexamination can serve as "a desirable alternative to litigation in the Federal Courts" over a patent's validity. *See* MPEP § 2601.

31.     The extent of a third-party's participation in the reexamination is a principal distinction between the two types of proceedings.  In appropriate circumstances, a third-party can request that an *ex parte* reexamination be initiated, but its role in any subsequent reexamination is thereafter strictly limited. *See* 37 C.F.R. §§ 1.530(b), 1.535; MPEP §§ 2251, 2254.  On the other hand, "[t]he optional *inter partes* alternative provides third party requesters with a greater opportunity to participate in reexamination proceedings." *Id.* § 2601.

32.     During an *inter partes* reexamination, a third-party requester has the right to comment every "time that the patent owner files a response to an action on the merits from the [PTO]," 35 U.S.C. § 314(b)(2).  The third-party requester also has "appeal rights to appeal to the Board of Patent Appeals and Interferences (Board) and to participate in the patent owner's appeal to the Board." MPEP § 2601; *see* 35 U.S.C. § 315(b).  For *inter partes* reexaminations commenced on or after November 2, 2002, like those at issue here, the third-party requester also has "appeal rights to appeal to the Court of Appeals for the Federal Circuit and to participate in the patent owner's appeal to the Federal Circuit." MPEP § 2601; *see* 35 U.S.C. § 315(b).

### Acushnet's Breach Of The 1996 Settlement Agreement

33.     In August 2004, Callaway Golf initiated the alternate-dispute process as required by the Settlement Agreement based on its allegation that Acushnet's Pro V1 balls infringe one or more claims of each of the Sullivan patents.

34.     For approximately eighteen months, Callaway Golf and Acushnet engaged in the multi-step alternative-dispute process mandated by the Settlement Agreement. The process included negotiation between senior executives and several non-binding mediation sessions before Magistrate Judge Thynge of the United States District Court for the District of Delaware.

35.     During the dispute resolution process, Acushnet made document requests of Callaway Golf under the procedures set out for mediation in the Settlement Agreement. *See* Ex. B at 24 (noting same in summary judgment ruling). Acushnet's General Counsel represented to United States District Judge Robinson that Acushnet was participating in the mediation before Magistrate Judge Thynge pursuant to sections 19.5 and 19.6 of the Settlement Agreement. *Id.* And, Acushnet invoked the confidentiality provisions of the Settlement Agreement before Judge Robinson. *Id.* & n.2.

36.     Then, on January 17, 2006, almost eighteen months into the dispute-resolution process and while mediation was ongoing, Acushnet abruptly filed four *inter partes* reexamination requests with the PTO, seeking reexamination of the validity of each of the Sullivan patents. It is these reexamination requests, filed while Acushnet was still participating in mediation under the Settlement Agreement, that are the subject of this lawsuit.

**The PTO's Continuation Of The *Inter Partes* Reexaminations
After Receiving Notice Of Acushnet's Breach**

37.     On March 21, 2006, Callaway Golf filed with the PTO a Petition to Suspend *Inter Partes* Reexamination Proceedings based on Acushnet's breach of the Settlement Agreement. Acushnet opposed the petition.

38.     On April 6 and 7, 2006, the PTO ordered *inter partes* reexamination of each of the Sullivan patents.  PTO Control Nos. 95/000,120, 95/000,121, 95/000,122, and 95/000,123.

39.     On April 10, 2006, the PTO issued a decision in which it "discarded" both Callaway Golf's Petition to Suspend *Inter Partes* Reexamination Proceedings and Acushnet's opposition to the petition, concluding that they were "improper papers" because they were "filed prior to the issuance of [the] initial Office action in the reexamination proceeding." *See* Decision Discarding Improper Papers (Apr. 10, 2006) (attached as Ex. K and incorporated herein).

40.     On April 13, 2006, Callaway Golf again alerted the PTO to Acushnet's breach in a Petition to Vacate Reexamination Orders as *Ultra Vires*.  Callaway Golf argued that the PTO should vacate the reexaminations because they had been initiated contrary to the dispute resolution provisions of a binding settlement agreement.  Acushnet opposed the petition.

41.     On June 7, 2006, the PTO denied Callaway Golf's petition. *See* Ex. F.  The PTO concluded that Acushnet's filing was not in breach of the Settlement Agreement because the Agreement was signed before the *inter partes* reexamination statute was enacted in 1999.  *Id.* at 5.  The PTO further reasoned that it could continue the *inter partes* reexaminations because Section 311(a) of the Patent Act does not explicitly exclude reexamination requests filed in breach of contract, *id.* at 4-5, because an agreement that would bar inquiry into a patent's validity would be contrary to public policy, *id.* at 5, and because MPEP § 2646(I) does not include reexaminations initiated in breach of a settlement agreement among its "examples of appropriate

circumstances that would require the Office to vacate an order for *inter partes* reexamination after granting the order," *id.* (citing MPEP § 2646(I)).

42.    On June 16, 2006, Callaway Golf filed a Petition to the Director for Reconsideration. Callaway Golf pointed to the broad language of the Settlement Agreement, which requires resolution of "all disputes" pursuant to its agreed-upon procedure, and thus forecloses *inter partes* reexaminations. Callaway Golf also argued that Section 311(a) does not authorize the filing in breach, that the strong public interest in the settlement of patent litigation requires the enforcement of settlement agreements, and that the MPEP contains a non-exhaustive list which, as a result, does not prevent the PTO from vacating *inter partes* reexaminations as *ultra vires* because they were filed in violation of a court-ordered settlement agreement. Acushnet again opposed Callaway Golf's petition.

43.    On September 7, 2006, the PTO denied Callaway Golf's petition. *See* Ex. G. The PTO held to its previous conclusions and additionally concluded that Acushnet's *inter partes* reexaminations were not filed in breach of the Settlement Agreement because the Agreement does not explicitly refer to "administrative proceedings." *Id.* at 8.

44.    The *inter partes* reexaminations continued, with Acushnet actively participating as the third-party requester—submitting briefs, documentary evidence, prior art golf balls, golf balls created after the fact using hindsight, and expert testimony. Acushnet's submissions consisted of hundreds of thousands of pages—thereby compounding and continuing its breach.

### The District Court Litigation

45.    Meanwhile, on February 9, 2006, in accordance with the terms of the Settlement Agreement, Callaway Golf filed suit against Acushnet in the United States District Court for the District of Delaware, alleging that Acushnet's Pro V1 balls infringe one of more claims of each of the Sullivan patents.

46.     On June 15, 2006, Callaway Golf sought leave to amend its Complaint to add a breach of contract claim asserting that Acushnet breached its obligation to exclusively resolve all patent disputes via a lawsuit in the District Court of Delaware by filing its *inter partes* reexamination requests with the PTO. Over Acushnet's opposition, the District Court granted leave to amend. The Amended Complaint was filed on November 27, 2006.

47.     On August 7, 2007, Callaway Golf and Acushnet filed motions for summary judgment on the breach of contract claim.

48.     On November 20, 2007, the District Court granted the motion of Callaway Golf for summary judgment of breach of contract and denied the motion of Acushnet for summary judgment of no breach of contract. *See* Ex. B.

49.     The District Court held that "reexamination proceedings . . . are precluded as possible remedies to any disputes involving the Sullivan patents." *Id.* at 27.

50.     The District Court held that "[t]he fact that *inter partes* reexamination proceedings were not introduced by statute until three years after the Agreement was signed does not change the effect of the controlling language. . . . The Agreement excludes any other 'proceedings' not initiated in this court. It, therefore, succeeds in guarding against the possibility of a change in law." *Id.* at 27-28 (quotation omitted).

51.     The District Court further held that "the public interest is not compromised" by the Settlement Agreement. *Id.* at 28-29. The District Court explained:

> Section 19.7 is akin to a forum selection clause; the parties have not contracted away their rights to contest the validity of each other's patents, but have agreed to do so before a court, rather than before the PTO. The parties' interests in adjudicating the validity of issued patents is not compromised. The public interest is not compromised here, as the public is not a party to the Agreement, and other third parties may still challenge the validity of the parties' patents through reexamination.

*Id.*

52.     The District Court recognized that "'[t]here is a strong public interest in settlement of patent litigation and that upholding the terms of a settlement encourages patent owners to agree to settlements—thus fostering judicial economy.'" *Id.* at 29 n.30 (quoting *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001)).

53.     The District Court concluded that "[Acushnet] violated the Agreement by filing the *inter partes* reexaminations to contest the validity of the Sullivan patents." *Id.* at 29.

54.     The case proceeded to trial on the infringement claims. Prior to trial, Acushnet stipulated that its Pro V1 balls infringed one or more claims of each of the Sullivan patents, but asserted that claims 1, 4, and 5 of the '293 patent, 1, 2, and 3 of the '156 patent, 5 of the '130 patent, and 1 and 3 of the '873 patent, were invalid due to anticipation and obviousness.

55.     The District Court held that Acushnet's anticipation defense failed as a matter of law and the case proceeded to trial solely on the question of obviousness.

56.     On December 14, 2007, a jury found that every claim at issue was valid except for dependent claim 5 of the '293 patent. Before the jury was released, Acushnet did not object to the verdict as inconsistent, even though dependent claim 5 of the '293 patent was found invalid, while independent claim 4 (from which claim 5 stemmed) was found valid.

57.     On November 10, 2008, the District Court issued a permanent injunction against Acushnet to become effective on January 1, 2009. On November 19, 2008, Acushnet filed a notice of appeal to the United States Court of Appeals for the Federal Circuit.

### Acushnet's "Gamesmanship" With Respect To The District Court's Breach Of Contract Ruling

58.     Following trial, on August 12, 2008, Acushnet filed a Motion To Dismiss Callaway's Claim Of Breach Of Contract (Count V) And To Partially Vacate The Court's November 20, 2007 Opinion And Order relating to that breach. For the first time, Acushnet

argued that the Stipulations of Dismissal filed with the District Court in 1996, which stated that the District Court "shall retain jurisdiction to resolve any and all disputes arising out of the Settlement Agreement," did not provide the District Court with jurisdiction to enforce the Settlement Agreement because the District Court was never asked to formally "so order" the Stipulations.

59.     On November 10, 2008, the District Court granted Acushnet's motion. *See* Ex. D. The Court held that, under precedent, it "must conclude that jurisdiction is lacking in the case at bar. . . . Despite the universal intention for the court to retain jurisdiction over the performance of the Agreement, this intent was not manifested in the court's order sufficient to confer subject matter jurisdiction to enforce a settlement agreement." *Id.* at 11.

60.     In so holding, the District Court noted its frustration with the "gamesmanship" of Acushnet in seeking to evade the strictures of the Agreement and the clear intent of the parties and the court. *Id.* at 13.

61.     The District Court wrote that "[d]espite having pursued an affirmative defense based on lack of standing, filing its own summary judgment motion on the issue, multiple papers in connection therewith (and in opposition to plaintiff's motion), and participating in an oral argument before the court, [Acushnet] never raised the issue of subject matter jurisdiction prior to the filing of its present motion, nearly a year after the court's summary judgment ruling and months following the jury's adverse verdict on [Acushnet]'s invalidity claims." *Id.* at 4-5.

62.     The District Court further wrote that "[Acushnet] admits that the information behind its motion to dismiss was available throughout this litigation; it simply did not look for it until recently (following its loss at trial), when it decided to 'better understand its rights as to where it may file any future actions' against plaintiff." *Id.* at 5.

63.     The District Court concluded:

To be clear, and despite the result compelled by the applicable precedent in this instance, the court does not condone [Acushnet]'s lamentable behavior in this case. [Acushnet] manifested an intent for the court to retain jurisdiction, ignored every opportunity to contest jurisdiction, and retained a benefit from the presumption that jurisdiction existed when it suited it. [Acushnet] elected to challenge jurisdiction only after [Acushnet] lost its invalidity case, presumably to minimize its overall losses.   Surely it was not the intent of the *Sawka* [*v. Healtheast Inc.*, 989 F.2d 138 (3d Cir. 1993)] and *Kokkonen* [*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)] Courts to allow such gamesmanship at the expense of nearly two years of court resources.

*Id.* at 12-13.

### Post-Appeal District Court Proceedings

64.     On August 14, 2009, the United States Court of Appeals for the Federal Circuit issued a decision on Acushnet's appeal. The Federal Circuit affirmed certain evidentiary rulings and the District Court's underlying claim construction and held that the jury's non-obviousness verdict as to 8 of the 9 claims at issue was supported by substantial evidence. However, the Federal Circuit considered Acushnet's inconsistent verdict claim—raised for the first time on appeal—and concluded that it required a new trial. The Federal Circuit held that Acushnet's anticipation defense could proceed to trial as well, and vacated the injunction that had been entered against Acushnet.

65.     On March 22, 2010, the second trial on Callaway Golf's infringement claims commenced in the United States District Court for the District of Delaware.

66.     On March 29, 2010, the jury returned a verdict of anticipation and obviousness and, on March 31, 2010, the District Court entered judgment in favor of Acushnet.

67.     On April 28, 2010, Callaway Golf filed a motion for a new trial or for judgment as a matter of law. Callaway Golf's motion remains pending before the District Court.

## Litigation To Reinstate The Original Breach Of Contract Ruling

68.     Meanwhile, after the District Court ruled that it lacked jurisdiction over the breach of contract claim, Callaway Golf refiled its breach of contract claim in the Delaware Court of Chancery.

69.     In March 2009, Vice-Chancellor Leo E. Strine, Jr. recommended that the parties file two joint motions: one in the original 1996 federal cases to correct the inadvertent error and one in the ongoing District Court litigation to reinstate the original summary judgment ruling.

70.     On March 30, 2009, Acushnet and Callaway Golf notified Vice-Chancellor Strine of their agreement to: (1) "prepare a joint Rule 60(b)(6) motion to the District Court, requesting that the court relieve them of the final judgment in the 1996 case, solely for the purpose of entering a new judgment in that case in which the District Court expressly enters an order which retains its jurisdiction to enforce the 1996 Agreement," and (2) following the Federal Circuit appeal, "submit a second joint motion pursuant to Rule 60(b)(5) or, in the alternative, Rule 60(b)(6), for the District Court to vacate the jurisdictional ruling dismissing Callaway Golf's breach of contract claim, thus allowing the District Court to reinstate the original grant of summary judgment in Callaway Golf's favor on that claim." *See* Letter to the Hon. Leo. E. Strine, Jr. (March 30, 2009) (attached as Ex. L and incorporated herein).

71.     On June 29, 2009, Acushnet and Callaway Golf filed a joint motion in each of the original 1996 cases, seeking to reopen the cases "for the sole purpose of allowing the Parties to file modified dismissal stipulations and allowing the Court to approve those stipulations by entry of an affirmative order in the Cases." *See Spalding & Evenflo Companies, Inc. v. Acushnet Company*, Civil No. 96-73, and *Acushnet Company v. Spalding and Evenflo Companies, Inc.*, Civil No. 96-78, Joint Motion to Reeopen Proceedings (D. Del. June 29, 2009), at 2 (attached as Ex. M and incorporated herein).

72.    In the joint motion, Acushnet and Callaway Golf represented that "the parties will submit a second joint motion to rehear in summary fashion Callaway Golf's breach of contract claim summary judgment motion, thus allowing this Court to reissue its original grant of summary judgment in Callaway Golf's favor on that claim." *Id.* at 6.

73.    On July 23, 2009, the District Court granted the joint motion and, on July 30, 2009, the District Court "so ordered" the Stipulations of Dismissal to cure the jurisdictional defect.

74.    Following the Federal Circuit appeal, Acushnet reneged on its commitment to file a joint motion to reinstate the summary judgment ruling. As a result, on November 8, 2010, Callaway Golf filed an opposed Motion Pursuant To Fed. R. Civ. P. 60 To Vacate The Court's Order Dismissing Callaway Golf's Breach Of Contract Claim For Lack Of Jurisdiction And To Reinstate The Court's November 20, 2007 Decision Granting Summary Judgment. In so doing, Callaway Golf notified the District Court of its intent to present the decision, if reinstated, to the PTO for its consideration in assessing the legality of the ongoing *inter partes* reexaminations initiated by Acushnet in breach of the Settlement Agreement.

75.    On January 13, 2011, the District Court granted Callaway Golf's motion, vacated the November 10, 2008 order dismissing the breach of contract claim for lack of jurisdiction, and reinstated the November 20, 2007 order granting Callaway Golf summary judgment on the breach of contract claim. *See* Ex. C at 8.

76.    In its decision, the District Court reiterated its prior conclusions that "[Acushnet] was bound by the terms of the Agreement and that the Agreement precluded filing requests for reexamination hearings before the PTO with respect to issues related in the case at bar." *Id.* at 2-3.

77.    The District Court confirmed that, [i]n its memorandum opinion of November 10, 2008, the court reluctantly granted [Acushnet]'s motion, despite the universal intention of the parties for the court to retain jurisdiction over the performance of the Agreement." *Id.* at 3.

78.    The District Court repeated its original conclusion that Acushnet's actions requiring the original jurisdictional decision of November 10, 2008 were "lamentable," again stating that:

> despite the result compelled by the applicable precedent in this instance, the court does not condone [Acushnet]'s lamentable behavior in this case. [Acushnet] manifested an intent for the court to retain jurisdiction, ignored every opportunity to contest jurisdiction, and retained a benefit from the presumption that jurisdiction existed when it suited it. [Acushnet] elected to challenge jurisdiction only after [Acushnet] lost its invalidity case, presumably to minimize its overall losses. Surely it was not the intent of the *Sawka* [*v. Healtheast Inc.*, 989 F.2d 138 (3d Cir. 1993)] and *Kokkonen* [*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)] Courts to allow such gamesmanship at the expense of nearly two years of court resources.

*Id.* (quoting Ex. B at 12-13).

79.    The District Court further concluded that:

> The circumstances at bar are exceptional.   The court's original grant of a summary judgment establishing contractual liability was vacated at the behest of [Acushnet], frustrating the original intent of the parties and the court. [Acushnet] has now stipulated to the very jurisdiction that it formerly contested, thus allowing the court to "reissue its original grant of summary judgment in [Callaway Golf's] favor."

*Id.* at 6 (quoting Ex. M at 6).

80.    The District Court rejected Acushnet's argument that Callaway Golf's motion to reinstate the summary judgment decision was untimely.  The Court explained:

> [T]he Joint Motions place responsibility for filing the Rule 60 Motion on both parties. [Callaway Golf] filed the instant motion only after [Acushnet] refused to support it. Although [Acushnet] now argues that the Rule 60 motion is untimely, [Acushnet] fails to point to evidence of record that it attempted to timely file a similar motion. The court finds the timing of the Rule 60 Motion to be reasonable under such circumstances.

*Id.* at 7.

81.     The District Court recognized the pendency of the PTO *inter partes* reexaminations and the potential impact of its decision on those proceedings. It stated: "There is no reason to deprive the PTO of any benefit, no matter how limited, it may receive from the court's judgment in this matter. That the PTO may not be induced to terminate or suspend reexaminations based on such judgment is of no moment to the equitable principles involved in the issue at bar." *Id.* at 7-8.

### The PTO's Continuation Of The *Inter Partes* Reexaminations In Spite Of The Judicial Finding Of Breach

82.     On November 23, 2010, while Callaway Golf's Rule 60 motion to reinstate the summary judgment decision was pending before the District Court, the PTO scheduled a hearing on the *inter partes* reexaminations for January 19, 2011 before the Board of Patent Appeals and Interferences ("BPAI").

83.     On December 14, 2010, Callaway Golf filed a Request To The BPAI For A Rescheduling Of Hearing. Callaway Golf explained that it intended to file a petition to vacate the *inter partes* reexaminations as *ultra vires* based on the District Court's decision as soon as the District Court had an opportunity to rule on the Rule 60 motion. Callaway Golf, therefore, requested that the hearing be adjourned for ninety (90) days to allow the District Court an opportunity to rule and the PTO time to consider the ruling. Callaway Golf argued that, given the determinative effect that the District Court's decision could have on the legality of the *inter partes* reexaminations, "there is good cause to consider it before—rather than after—further potentially unnecessary PTO proceedings, thereby preserving scarce administrative resources."

84.     On December 21, 2010, Acushnet opposed the request, arguing that there was "no reason to believe" that the District Court would decide Callaway Golf's Rule 60 motion within

ninety days. Acushnet also indicated its intent to appeal the breach of contract decision once reinstated.

85.     On January 6, 2011, the Acting Chief Administrative Patent Judge denied Callaway Golf's request to postpone the BPAI hearing because of the "uncertainty as to when a final order will be issued concerning [Acushnet]'s breach of the settlement agreement." *See* Ex. H at 3. The decision was "irrespective of the merits of the ultimate issue of whether the Reexamination Proceedings should be continued or terminated." *Id.*

86.     On January 12, 2011, Callaway Golf filed with Director Kappos a Petition To Vacate *Inter Partes* Reexaminations Or, In The Alternative, To Postpone Oral Hearing. Although the District Court had not yet reinstated its ruling on Acushnet's breach of the Settlement Agreement, Callaway Golf argued that, because of the imminence of the BPAI hearing and the need to consider the ramification of the District Court decision beforehand, the PTO should immediately consider the petition or, at a minimum, postpone the BPAI hearing.

87.     In its petition, Callaway Golf argued that Acushnet's filing of a request for *inter partes* reexamination in judicially established breach of a court-ordered settlement agreement divested the PTO of jurisdiction or, at a minimum, barred the continuing participation of Acushnet in the reexamination, including at any BPAI hearing. Callaway Golf also argued that a fully adjudicated District Court ruling on a non-patent issue as between identical parties was entitled to preclusive effect before the PTO. Callaway Golf was clear that its petition was raising two important issues of law that had never been decided by the PTO: (1) whether the filing of a request for *inter partes* reexamination in established breach of a court-ordered settlement agreement divests the PTO of jurisdiction or, at a minimum, bars the continuing participation of the breaching party in the reexaminations, and (2) whether a fully adjudicated district court

ruling on a non-patent issue as between identical parties is entitled to preclusive effect before the PTO.

88.   On January 13, 2011, the day after Callaway Golf filed its petition, the District Court reinstated its November 20, 2007 order granting Callaway Golf summary judgment on the breach of contract claim. *See* Ex. C.

89.   On January 14, 2011, Callaway Golf filed two petitions with the PTO regarding the District Court's breach of contract decision. With the BPAI, Callaway Golf filed a Petition For Temporary Relief In Light Of New Court Decision and with the Director, Callaway Golf filed a Supplemental Petition For Temporary Relief In Light Of New Court Decision. In each, Callaway Golf argued that there was no longer any uncertainty regarding the timing of the District Court decision, that the decision was issue preclusive on the PTO, and that the effect of the decision on the lawfulness of the PTO's authority over the *inter partes* reexaminations should be considered prior to the BPAI hearing.

90.   On January 14, 2011 and January 18, 2011, Acushnet filed oppositions to Callaway's petitions then pending before the Director.

91.   On January 18, 2011, Callaway Golf filed with the Director a Petition To Accept Reply Filing And Reply In Further Support Of Callaway Golf's Supplemental Petition For Temporary Relief In Light Of New Court Decision. Callaway Golf again asserted that the BPAI hearing should be postponed until the ramifications of the District Court decision could be addressed.

92.   On January 18, 2011, the Acting Chief Administrative Patent Judge denied Callaway Golf's Petition For Temporary Relief In Light Of New Court Decision. *See* Ex. I. He held that a postponement was not warranted because, *inter alia*, "[n]otwithstanding the ruling by

the District Court on the settlement agreement issue, it is apparent that (1) the USPTO was not a party to the District of Delaware proceedings and (2) there is no definitive ruling by the District Court requiring that the present Reexamination Proceedings be terminated." *Id.* at 2.

93.    On January 19, 2011, the BPAI held a hearing on the four Sullivan *inter partes* reexaminations and equally divided the argument time between Acushnet and Callaway Golf.

94.    On March 9, 2011, the BPAI issued a decision on the *inter partes* reexaminations, in which it affirmed the Examiner's conclusion of unpatentability. The BPAI's decision is subject to further administrative challenge before the BPAI on rehearing. *See* 37 C.F.R. § 41.79.

95.    Also on March 9, 2011, the Acting Chief Administrative Patent Judge denied Callaway Golf's petition to vacate the *inter partes* reexaminations based entirely on the PTO's prior decisions denying Callaway Golf's requests to vacate the *inter partes* reexaminations. Ex. E at 3. The Acting Chief Administrative Patent Judge failed to address the two new legal issues presented by Callaway Golf in its petition and ignored the existence of the District Court's ruling which undermines the PTO's prior decisions. Instead, he concluded that a third-party requester's "breach of a settlement agreement by instituting a reexamination proceeding" does not "constitute[] sufficient cause for vacating the reexamination proceeding." *Id.* The March 9, 2011 Order thus adopted and incorporated the reasoning and results of the January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006 Orders.

## COUNT ONE

### Administrative Procedure Act

96.    Paragraphs 1-95 are incorporated by reference herein.

97.    The Administrative Procedure Act ("APA") provides for judicial review of federal agency actions. 5 U.S.C. §§ 701-706. Under the APA, a court may hold unlawful and set aside federal agency action that is "in excess of statutory jurisdiction, authority, or

limitations" or that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

98. Defendants' failure to vacate these *inter partes* reexaminations as never properly commenced under 31 U.S.C. § 311(a), and therefore void *ab initio*, clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

99. Defendants' failure to vacate these *inter partes* reexaminations as *ultra vires* under MPEP § 2646(I), clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

100. Defendants' failure to accord collateral estoppel effect to the District Court's ruling that the Settlement Agreement was valid and binding and that Acushnet violated that Agreement by requesting these *inter partes* reexaminations clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

101. Defendants' failure to reject evidence and argument submitted by Acushnet, consisting of hundreds of thousands of pages of expert testimony, alleged prior art golf balls, and balls constructed in hindsight at the direction of Acushnet's lawyers, clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

102. Additionally or alternatively, Defendants' failure to bar any further participation by Acushnet after the District Court's January 13, 2011 order reinstating its findings that the Settlement Agreement was valid and binding and that Acushnet violated that Agreement by requesting these *inter partes* reexaminations clearly exceeded the PTO's statutory jurisdiction

and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

103.    Additionally or alternatively, Defendants' failure to suspend or stay these *inter partes* reexaminations in favor of a federal district court action in the venue required by the Settlement Agreement, which involves the same parties, the same patents, and the same issues of validity, clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

104.    Additionally or alternatively, Defendants' continuation of these *inter partes* reexaminations and their continuing to allow Acushnet to participate in those proceedings as a "third-party requester," up to and including the time of the filing of this Complaint constitutes agency action that clearly exceeds the PTO's statutory jurisdiction and authority, and is and continues to be arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

105.    The agency actions or failures to act alleged in Paragraphs 1 to 104 of this Complaint and contained in the March 9, 2011, January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006 PTO Orders constitute either agency action unlawfully withheld or unreasonably delayed or are agency actions, findings, and conclusions contrary to law.

## COUNT TWO

### Writ Of Mandamus

106.    Paragraphs 1-105 are incorporated by reference herein.

107.    Plaintiff has exhausted its remedies before the PTO on the issues raised in this complaint and has no adequate remedy at law for the unlawful actions of the PTO. The PTO owed Plaintiff a clear nondiscretionary duty to vacate as *ultra vires* the *inter partes* reexaminations of the Sullivan patents. As a direct and proximate cause of Defendants' failure to

do so, Plaintiff has been irreparably harmed and continues to suffer ongoing irreparable harm. Because Plaintiff has "a clear right to the relief sought," Defendants have "a clear duty to do the particular act requested by the [Plaintiff]," and "no other adequate remedy is available," mandamus relief is warranted. *See In re First Federal Sav. and Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988) (finding writ of mandamus appropriate to order Secretary of Treasury to pay refund to taxpayer); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty.").

108.   A writ of mandamus should issue enjoining the PTO from further proceeding with *inter partes* reexaminations of the Sullivan patents and requiring that the *inter partes* reexaminations of the Sullivan patents be vacated as *ultra vires*.

109.   A writ of mandamus should also issue enjoining the PTO from allowing Acushnet to initiate, or participate in, any reexamination of any or all of the Sullivan patents.

110.   A writ of mandamus should issue enjoining the PTO to strike from the record all submissions in any form by Acushnet in these proceedings and to proceed, if at all, with a new *ex parte* reexamination with participation only by Callaway Golf and the Patent Office as required by statute and regulation.

111.   Alternatively, a writ of mandamus should issue enjoining the PTO to stay or suspend proceedings in the *inter partes* reexaminations of the Sullivan patents pending before it until the validity of the same four patents is finally determined in the litigation currently pending before the United States District Court for the District of Delaware, *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del.) (Robinson, U.S.D.J.).

## PRAYER FOR RELIEF

WHEREFORE, Callaway Golf respectfully requests that this Court enter judgment in favor of Callaway Golf and against the PTO and award Callaway Golf the following relief:

A.    A declaration, pursuant to 28 U.S.C. § 2201, that;

(i)    Defendants' failure to vacate these *inter partes* reexaminations as never properly commenced under 31 U.S.C. § 311(a), and therefore void *ab initio* clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(ii)   Defendants' failure to vacate these *inter partes* reexaminations as *ultra vires* under MPEP § 2646(I), clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(iii)  Defendants' failure to accord collateral estoppel effect to the District Court's ruling that the Settlement Agreement was valid and binding and that Acushnet violated that Agreement by requesting these *inter partes* reexaminations clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(iv)   Defendants' failure to reject evidence and argument submitted by Acushnet, consisting of hundreds of thousands of pages of expert testimony, alleged prior art golf balls, and balls constructed in hindsight at the direction of Acushnet's lawyers, clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(v)    Defendants' failure to bar any further participation by Acushnet after the District Court's January 13, 2011 order reinstating its findings that the Settlement Agreement was valid and binding and that Acushnet violated that Agreement by requesting these *inter partes* reexaminations clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(vi)   Defendants' failure to suspend or stay these *inter partes* reexaminations in favor of a federal district court action in the venue required by the Settlement Agreement, which involves the same parties, the same patents, and the same issues of validity, clearly exceeded the PTO's statutory jurisdiction and authority, and was arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

(vii)   Defendants' continuation of these *inter partes* reexaminations and their continuing to allow Acushnet to participate in those proceedings as a "third-party requester," up to and including the time of the filing of this Complaint constitutes agency action that clearly exceeds the PTO's statutory jurisdiction and authority, and is and continues to be arbitrary, capricious, and otherwise contrary to law within the meaning of 5 U.S.C. § 706.

B.   An order, pursuant to 5 U.S.C. § 706, vacating, holding unlawful and setting aside the PTO Order of March 9, 2011, and the PTO Orders of January 18, 2011, January 6, 2011, September 7, 2006 and June 7, 2006 on which the March 9 Order relies, all denying Callaway Golf relief with respect to its petitions to vacate the *inter partes* reexaminations of the Sullivan patents.

C.   Preliminary injunctive relief pursuant to 5 U.S.C. § 705, and Fed. R. Civ. P. 65 and/or permanent injunctive relief ordering all the Defendants and their officers, employees and agents to:

(i)   immediately vacate the *inter partes* reexaminations of the Sullivan Patents, including the Examiner's decision and the BPAI's order affirming that decision; and/or

(ii)   immediately bar any further participation of any kind in any form by Acushnet in the *inter partes* reexaminations of the Sullivan Patents; and/or

(iii)   immediately cease all activities in the *inter partes* reexaminations of the Sullivan Patents and suspend and stay those proceedings pending final resolution (including any appeal(s) to the Federal Circuit) of the litigation currently pending before the United States District Court for the District of Delaware, *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR (D. Del.) (Robinson, U.S.D.J.).

D.   An award of Callaway Golf's costs and reasonable attorneys' fees, as appropriate.

E.   An award of any further relief to Callaway Golf that this Court deems just, proper, and equitable.

Respectfully submitted,

Date:  March 15, 2011                 By:    _____
                                             Andrew G. McBride (*pro hac vice* pending)
                                             Attison Barnes, III (Va. Bar No. 30458)
                                             Claire J. Evans (*pro hac vice* pending)
                                             WILEY REIN LLP
                                             1776 K Street, NW
                                             Washington, DC  20006
                                             Tel.: (202) 719-7000
                                             Fax: (202) 719-7049


                                             *Of Counsel*

                                             Thomas L. Halkowski (#4099)
                                             FISH & RICHARDSON
                                             222 Delaware Avenue, 17th Floor
                                             P.O. Box 1114
                                             Wilmington, DE 19899-1114
                                             (302) 652-5070 Telephone
                                             (302) 652-0607 Facsimile

                                             Frank E. Scherkenbach
                                             FISH & RICHARDSON
                                             One Marina Park Drive
                                             Boston, MA 02110
                                             (617) 542-5070 Telephone
                                             (617) 542-8906 Facsimile

                                             Attorneys for Plaintiff
                                             Callaway Golf Company