IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUL 27 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

CALLAWAY GOLF COMPANY,          )
                                )
          Plaintiff,            )
                                )
     v.                         )      1:11cv266 (LMB/TCB)
                                )
DAVID J. KAPPOS, Under Secretary )
of Commerce for Intellectual    )
Property and Director of the    )
United States Patent and Trademark )
Office, et al.,                 )
                                )
          Defendants.           )

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary
judgment [Dkt. Nos. 10 and 22] concerning plaintiff Callaway Golf
Company's ("Callaway") request to vacate defendant United States
Patent and Trademark Office's ("PTO") inter partes reexaminations
of four of Callaway's patents. For the reasons stated in this
Memorandum Opinion, Callaway's motion will be denied and
defendants' motion will be granted.

### I. Background

A.   Statutory and regulatory background

A patent's validity can be challenged either in a lawsuit
filed in federal district court or through a reexamination
conducted by the PTO. Congress has created two types of patent
reexamination procedures: ex parte and inter partes. Congress
created the ex parte reexamination in 1980. Either the PTO on
its own initiative, or a third party, can request an ex parte

reexamination.  37 CFR § 1.520.

In 1999, Congress created the <u>inter partes</u> reexamination. Unlike an <u>ex parte</u> reexamination, which allows the PTO to initiate a reexamination, an <u>inter partes</u> reexamination must be requested by a third party.  When a request for <u>inter partes</u> reexamination is made, the PTO must determine whether a "substantial new question of patentability affecting any claim of the patent concerned is raised by the request."  35 U.S.C. § 312(a).  If the PTO determines that such a question exists, the PTO is required to begin the <u>inter partes</u> reexamination.  35 U.S.C. § 313.  After the PTO initiates an <u>inter partes</u> reexamination, the patent owner may submit pleadings that support the patent's validity.  The requestor may 1) submit written comment to the patent owner's response, 2) appeal an adverse reexamination decision to the Board of Patent Appeals and Interferences ("BPAI"), and 3) brief and argue its position before the board.  <u>Cooper Techs. Co. v. Dudas</u>, 2007 U.S. Dist. LEXIS 88046, at *2 (E.D. Va. Nov. 30, 2007), <u>aff'd</u> 536 F.3d 1330 (Fed. Cir. 2008).

B.    <u>Callaway's patents and the 1996 settlement agreement</u>

Callaway and its competitor, Acushnet Company ("Acushnet") manufacture golf balls.  Callaway owns U.S. Patent Nos. 6,210,293; 6,503,156; 6,506,130; and 6,595,873 ("Sullivan patents"), which claim a multi-layer golf ball.  Pl.'s Statement

of Material Facts at ¶ 2.

On August 5, 1996, Acushnet entered into an agreement with
Spalding and Evenflow Companies, Inc., Callaway's predecessor-in-
interest, and Lisco, Inc., a wholly owned Spalding subsidiary, to
resolve various patent-related claims in various civil actions
then pending in the United States District Court for the District
of Delaware (Civil Action Nos. 95-CV-366 and 95-CV-640, filed by
Spalding and Civil Actions 95-CV-10384 and 95-CV-10376, filed by
Acushnet). The agreement contained a "Dispute Resolution"
clause, which provides that:

> [a]ny dispute arising out of or relating to patents,
> including the above mentioned patents, other
> intellectual property owned or controlled by the
> parties, or claims relating to advertising shall be
> resolved in accordance with the procedures specified in
> this Section, which shall be the sole and exclusive
> procedure for the resolution of any such disputes.

A253-55. The agreement requires a series of settlement
discussions and mediation. If the dispute is unresolved after
mediation, "either party may initiate proceedings but only in the
United States District Court for the District of Delaware, and no
other. Said court retains jurisdiction of the parties for such
purposes." A256. The Stipulations of Dismissal of the Delaware
cases, filed under Fed. R. Civ. P. 41, stated that the United
States District Court for the District of Delaware "shall retain
jurisdiction to resolve any and all disputes arising out of the
Settlement Agreement in accordance with the terms of the

Settlement Agreement." A258-59.

Problems arose between Callaway and Acushnet over Acushnet's Titleist Pro VI line of golf balls, with Callaway alleging in 2005 that these golf balls infringe its Sullivan patents. Throughout 2005, the parties tried to resolve their dispute, but failed to do so. Pl.'s Statement of Material Facts at ¶ 3.

C.   Acushnet's inter partes reexamination request

On January 17, 2006, Acushnet requested that the PTO conduct inter partes reexaminations of Callaway's Sullivan patents. A2, 2200, 2518, 2819. On April 7, 2006, the PTO determined that Acushnet's request raised a substantial new question of patentability and accordingly began inter partes reexaminations of the Sullivan patents. A187.[1]

On April 13, 2006, Callaway filed an administrative petition to vacate the reexaminations, arguing that Acushnet had violated the 1996 settlement agreement by requesting the reexaminations. A231. On June 7, 2006, the PTO denied Callaway's petition, concluding that the reexamination statute requires the PTO to order and conduct inter partes reexamination when a substantial new question of patentability is found and that an agreement between parties does not relieve the PTO of that statutory duty.

---

[1]The PTO conducted reexaminations on each of the four Sullivan patents. Because the legal arguments apply equally to the reexamination of each patent, this Memorandum Opinion will cite and quote only from the inter partes reexamination of U.S. Patent No. 6,210,293.

4

A436.  The PTO also noted that Congress passed the <u>inter partes</u> reexamination statute in 1999, three years after the parties entered their settlement agreement.  <u>Id.</u>  Moreover, the PTO concluded that such a contractual provision that prohibits challenges to patent validity would be contrary to public policy, and reasoned that withdrawing the <u>inter partes</u> reexaminations "would leave both the public and the patent owner with an unresolved request for reexamination and unresolved substantial new question of patentability[.]" A437-38.

On June 16, 2006, Callaway filed a petition for reconsideration of the denial of its petition to vacate.  A440. On September 7, 2006, the PTO denied the petition for reconsideration.  A551.  The PTO relied largely on the reasoning of its earlier decision, concluding that Acushnet did not breach the 1996 agreement, and that the agreement does not bind the PTO. <u>Id.</u>  The PTO stated that its decision constitutes a "final agency action" under 5 U.S.C. § 704, which would allow Callaway to seek judicial review in federal court; however, Callaway did not seek judicial review and the reexamination continued.  A565.

D.  <u>Litigation in the United States District Court for the District of Delaware</u>

On February 9, 2006, shortly after Acushnet requested <u>inter partes</u> reexaminations, Callaway sued Acushnet in the United States District Court for the District of Delaware, alleging that Acushnet's Pro V1 golf balls infringe the Sullivan patents.

<u>Callaway Golf Co. v. Acushnet Co.</u>, 1:06cv91 (D. Del.).  On
October 18, 2006, the Court granted Callaway's motion to amend
the complaint to add a breach of contract claim, which asserted
that Acushnet breached the settlement agreement by filing the
reexamination requests.

Both parties moved for partial summary judgment as to
whether Acushnet had breached the settlement agreement.   On
November 20, 2007, the Court granted Callaway's motion and denied
Acushnet's motion, finding that Acushnet "violated the Agreement
by filing the inter partes reexaminations to contest the validity
of the Sullivan patents."   <u>Callaway Golf Co. v. Acushnet Co.</u>, 523
F. Supp. 2d 388, 407 (D. Del. 2007).  On August 12, 2008,
Acushnet moved to vacate the breach of contract ruling, arguing
that the Delaware district court did not have jurisdiction to
enforce the settlement agreement because the Court did not
formally "so order" the stipulations of dismissal in 1996.   On
November 10, 2008, the Court granted Acushnet's motion,
concluding that "[d]espite the universal intention for the court
to retain jurisdiction over the performance of the Agreement,
this intent was not manifested in the court's order sufficient to
confer subject matter jurisdiction to enforce a settlement
agreement."   <u>Callaway Golf Co. v. Acushnet Co.</u>, 585 F. Supp. 2d
592, 599 (D. Del. 2008).  On June 29, 2009, after Callaway
refiled the breach of contract claim in the Delaware Court of

6

Chancery, the parties filed a joint motion to modify the 1996 stipulations of dismissal to allow the Delaware federal court to have jurisdiction.  On July 23, 2009, the joint motion was granted, curing the jurisdictional defect.  Compl. ¶¶ 71-73.  On January 13, 2011, the district court granted Callaway's motion and reinstated the summary judgment ruling on the breach of contract claim; however, because the court has yet to decide damages, it has not issued a final order and Acushnet is unable to appeal.  Id. ¶ 75; Am. Brief at 9.

While the breach of contract issues were being addressed, the patent infringement portion of the Delaware civil action continued.  On December 14, 2007, a jury found that all but one of the claims in the Sullivan patents were valid.  Acushnet appealed to the United States Court of Appeals for the Federal Circuit, which reversed and remanded the action for a new trial on invalidity.  Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331 (Fed. Cir. 2009).  In March 2010, the retrial of the validity issue resulted in a jury verdict that the Sullivan patents were invalid.[2]

E.   Board of Patent Appeals and Interferences proceeding

While the Delaware litigation continued, the PTO proceeded with the inter partes reexaminations, which concluded with the

---

[2] On May 20, 2011, Callaway filed a Notice of Appeal of the Court's judgment, 1:06-cv-00091-SLR (D. Del.), Dkt. No. 653.

Examiner finding that certain claims in the Sullivan patents were
not patentable.  A2168.  Callaway appealed that determination to
the BPAI, which scheduled a hearing on the appeal for January 19,
2011; however, on January 14, 2011, one day after it prevailed on
its breach of contract claim in Delaware, Callaway filed with the
BPAI a Petition for Temporary Relief in Light of New Court
Decision, in which it sought to postpone the BPAI hearing.
A2038.[3] On January 18, 2011, the Acting Chief Administrative
Patent Judge denied Callaway's petition, holding that the
district court decision did not require termination of the
reexamination proceedings and that whether the "requester may
have breached a contractual obligation . . . does not necessarily
make the subsequent actions of the USPTO illegal or the
proceeding 'unlawfully initiated.'" A2162-2168.

On March 9, 2011, the BPAI affirmed the PTO's conclusion of
unpatentability.  A2168-2194.  Also that day, the Acting Chief
Administrative Patent Judge denied Callaway's petition to vacate
the reexaminations, concluding that the "breach of a settlement
agreement by instituting a reexamination proceeding" does not
constitute "sufficient cause for vacating the reexamination
proceeding." A2195-99.  On April 11, 2011, Callaway filed with

---

[3]Callaway also filed a Petition to Vacate Inter Partes
Reexaminations or, in the Alternative, to Postpone Oral Hearing,
in which it argued that the Delaware ruling requires the PTO to
vacate the reexaminations or postpone the BPAI hearing.

the BPAI a request for rehearing of its decision on

unpatentability.  The request was denied in June 2011.

F.    The present litigation

On March 15, 2011, Callaway filed this civil action against

David J. Kappos, Under Secretary of Commerce for Intellectual

Property and Director of the PTO, the PTO, and the United States,

for declaratory and injunctive relief, alleging that the PTO's

failure to vacate, suspend, or stay the inter partes

reexaminations was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law" and

therefore should be set aside under the Administrative Procedure

Act ("APA"),  5 U.S.C. § 706(2).  Callaway seeks a declaratory

judgment that the PTO's failure to vacate, suspend, or stay the

proceedings violated the APA, and it seeks an injunction vacating

the reexaminations and the BPAI's orders, and barring further

participation in any form by Acushnet in inter partes

reexaminations of the Sullivan patents.  Callaway also seeks a

writ of mandamus enjoining the PTO from further proceeding with

inter partes reexaminations of the Sullivan patents, or requiring

the PTO to stay or suspend the reexaminations until the validity

of the patents is finally determined in federal court.  Lastly,

Callaway seeks to recover the attorney's fees and costs incurred

in this litigation.[4]

## II. Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48 (1986). The Court must view the record in the light most favorable to the nonmoving party. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252. Thus, if a nonmoving party bears the burden of proof on a claim at trial, the moving party may prevail on its Rule 56 motion by showing that there is a lack of evidence to carry the other party's burden as to any essential element of the cause of action. See Celotex Corp. v. Catrett. 477 U.S. 317, 322-23 (1986). Once the moving party has met its burden of demonstrating the absence of an issue of material fact, the party opposing

---

[4] On May 11, 2011, Acushnet was granted leave to file an amicus brief.

summary judgment may not rest on mere allegations or inferences, but must instead proffer specific facts or objective evidence showing that a genuine issue of material fact exists requiring further proceedings. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The APA, 5 U.S.C. § 701 <u>et seq.</u>, confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency. <u>See</u> 5 U.S.C. § 706; <u>see also</u> <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973). As such, there can be no genuine issue of material fact in an APA action; rather, it is the legal questions presented in the civil action that are ripe for resolution on cross-motions for summary judgment. <u>See</u> <u>Am. Forest Res. Council v. Hall</u>, 533 F. Supp. 2d 84, 89 (D.D.C. 2008) (quoting <u>Occidental Eng'g Co. v. INS</u>, 753 F.2d 766, 769-70 (9th Cir. 1985)) ("[I]t is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'").

### III.   Discussion

#### A.   Jurisdiction

In an amicus brief, Acushnet argues that the PTO's denial of the petitions to vacate the <u>inter partes</u> reexaminations are

11

not subject to judicial review because the PTO's determination that a substantial new question of patentability exists is "final and non-appealable" under 35 U.S.C. § 312(c). Am. Brief at 10.[5] Callaway responds that review of the PTO's denial of a petition to vacate <u>inter partes</u> reexaminations is subject to judicial review because the petition did not dispute whether a substantial new question of patentability exists. Callaway Opp. at 17.

Callaway's argument is correct. Section 312(c) only exempts from judicial review the PTO's substantive determination that a reexamination application raises "a substantial new question of patentability." The statute does not divest the courts of jurisdiction over all decisions related to <u>inter partes</u> reexaminations. <u>See, e.g.</u>, <u>Cooper Techs. Co.</u>, 2007 U.S. Dist. LEXIS 88046 (reviewing whether the PTO should have granted the petition to terminate an <u>inter partes</u> reexamination). Similarly, Callaway's challenge does not address whether Acushnet's reexamination applications raised a substantial new question of patentability; instead, Callaway challenges the PTO's decision that it was not required to terminate the <u>inter partes</u> reexaminations in light of the settlement agreement or the finding in the Delaware litigation that Acushnet had breached that agreement by requesting the <u>inter partes</u> reexamination. Accordingly, this Court has jurisdiction to review the PTO's

---

[5]The government does not challenge the Court's jurisdiction.

denial of the petition to vacate the <u>inter partes</u> reexaminations.

B.   <u>Administrative Procedure Act claim</u>

Under the APA, the Court may set aside the PTO's decisions not to vacate the reexaminations of the Sullivan patents only if those decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).   This standard does not allow the Court "to substitute its judgment for that of the agency." <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971). The PTO's denials of Callaway's petitions to vacate the reexaminations were not arbitrary or capricious because neither the 1996 settlement agreement to which the PTO was not a party, nor the breach of contract ruling in the Delaware litigation, in which the PTO did not appear, has any binding effect on the PTO.

1.   <u>Effect of the 1996 settlement agreement on the inter partes reexaminations</u>

After reviewing the <u>inter partes</u> reexamination statute, the PTO concluded that the 1996 settlement agreement could not abrogate its ability to reexamine the Sullivan patents.   The PTO also concluded that a contractual provision that absolutely prohibits reexamination would violate the strong public policy interest in ensuring valid patents.   A433-39.

The PTO's decision is grounded in basic contract law.   The 1996 settlement agreement cannot restrict the PTO's participation in the reexaminations unless the PTO was a party to the

13

agreement.   See Showmaker v. Advanta USA, Inc., 411 F.3d 1366, 1369 (Fed. Cir. 2005) (stating that a contract's terms "bind only the parties.").   The PTO was not a party to the 1996 settlement agreement and therefore cannot be bound by any of its provisions.

Moreover, the PTO correctly concluded that the inter partes reexamination statute provides a nondiscretionary duty, requiring the PTO to conduct a reexamination once it receives a request and makes the initial finding that a substantial new question of patentability exists.  A436.  This conclusion is based on Congress's inclusion of "shall" in §313, which provides that "the determination shall include an order for inter partes reexamination[.]"  35 U.S.C. § 313.   The word "shall" requires the PTO to begin reexamination.  See, e.g., Sierra Club v. Johnson, 541 F.3d 1257, 1265 (11th Cir. 2008) (holding that "'shall' creates a nondiscretionary duty for the Administrator").

The PTO also argues that the inter partes statute allows "[a]ny" third party to request an inter partes reexamination "at any time," 35 U.S.C. § 311.  The statute does not require the PTO to first determine whether the third-party requester is contractually prohibited from requesting a reexamination, nor does the statute even allow the PTO discretion to consider that issue.  Callaway has not cited any caselaw or statute that would allow the PTO to disregard its nondiscretionary duty to begin reexaminations once a third party makes a request and the PTO

14

makes its initial finding.

    The PTO also correctly argues that a private contractual
agreement that would prohibit reexamination would be contrary to
public policy.  A437.  Patents are government-granted monopolies
that provide the patent holders with tremendous power to suppress
competition.  <u>See</u> <u>American Steel Foundries v. Robertson</u>, 262 U.S.
209, 215 (1923).  Accordingly, there is a strong public interest
in ensuring that patents are valid.  As the Supreme Court held in
<u>Lear v. Adkins</u>, 39 U.S. 653 (1969), prohibitions on challenges to
patent validity violate public policy which favors "permitting
full and free competition in the use of ideas which are in
reality part of the public domain."  <u>Id.</u> at 670.  The patent
reexamination process helps ensure such full and free
competition.  Because the purpose of reexaminations "is to
correct errors made by the government . . . and if need be to
remove patents that never should have been granted," <u>Patlex</u>
<u>Corp. v. Mossinghoff</u>, 758 F.2d 594, 604 (Fed. Cir. 1985), a
private contract that prevents reexamination is void as a matter
of public policy.

    Callaway responds that the PTO's actions compromise an even
stronger policy interest: the need to enforce obligations under
settlement agreements.  Callaway Summ. J. Mot. at 17, citing
<u>Flex-Foot, Inc. v. CRP, Inc.</u>, 238 F.3d 1362, 1370 (Fed. Cir.
2001) ("Settlement agreements must be enforced if they are to

                              15

remain effective as a means for resolving legal disagreements."). Although there is a strong public interest in enforcing settlement agreements, that is precisely what the Delaware federal district Court did when it granted Callaway summary judgment on its breach of contract claim.  Acushnet may well be liable for damages for that breach.  Callaway, however, has cited no caselaw that requires the PTO to independently enforce Callaway's private contract.  Nor has Callaway demonstrated that the public interest in enforcement of settlement agreements outweighs the public interest in patent validity.

Callaway's argument rests largely on the unsupported assumption that the inter partes reexamination is a judicial proceeding.  A review of the statutes, legislative history, and caselaw, however, reveals that the PTO is not a neutral adjudicator in an inter partes reexamination.  In both ex parte and inter partes reexaminations, the PTO determines whether it correctly approved the patent during its initial examination of the patent's application.  The statutes creating both ex parte and inter partes reexaminations state that the reexaminations must "be conducted according to the procedures established for initial examination[.]" 35 U.S.C. §§ 305 and 314(a).  The Federal Circuit summarized the PTO's role in reexaminations:

> In a very real sense, the intent underlying
> reexamination is to 'start over' in the PTO with
> respect to the limited examination areas involved, and
> to reexamine the claims, and to examine new or amended

16

claims, as they would have been considered if they had
been originally examined in light of all of the prior
art of record in the reexamination proceeding.

In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985). Although In re

Etter involved an ex parte reexamination, the PTO's role is

identical in an inter partes proceeding. Congress created the

inter partes reexamination "to further encourage potential

litigants to use the PTO as [an] avenue to resolve patentability

issues without expanding the process into one resembling

courtroom proceedings." 145 Cong. Rec. H6929, H6944 (daily ed.

Aug. 3, 1999) (statement of Rep. Rohrabacher). As such, it is

clear that the inter partes reexamination is not a judicial

proceeding.

At oral argument and in its briefs, Callaway relied heavily

on dicta in Joy Manufacturing Co. v. National Mine Service Co.,

810 F.2d 1127 (Fed. Cir. 1987) for its argument that a forum

selection clause in a contract can prevent reexamination. In Joy

Manufacturing, the plaintiff alleged that when the defendant

requested a reexamination, the defendant had breached the

provision in their contract that provided that the defendant

would not "file any suit in any United States Court" contesting

the validity of the plaintiff's patents. Id. at 1129. In

holding that the literal terms of the settlement agreement did

not prohibit the defendant from seeking reexamination because the

PTO is not a "United States court," the Federal Circuit also

17

stated that, "[i]n view of the new reexamination procedure,
parties would be well advised to draft agreements, where
appropriate, to encompass this new facet of patent law." Id. at
1130.  Callaway argues that this dicta stands for the proposition
"that a properly worded forum-selection clause could preclude a
reexamination at the PTO."  Callaway Opp. at 7 (emphasis in
original).  Callaway's interpretation of Joy Manufacturing is
incorrect.  Nowhere in the opinion did the Federal Circuit state
that a forum selection clause could prevent the PTO from
reexamining a patent.  To the contrary, the Federal Circuit
stated that a breach of such a forum selection clause does not
require the PTO to cease reexamination:

> In this connection, we also note that the principal
> relief which Joy seeks -- namely, stopping the
> reexamination of its patent -- is not available in
> these proceedings . . . The decision by the
> Commissioner to institute reexamination is not subject
> to review; and the injunction sought against National
> would have no effect on reexamination since National,
> as the requestor, has no future role to play in that ex
> parte proceeding.

Id. at 1130 (citations omitted).  Therefore, Joy Manufacturing
does not support the proposition that a forum selection clause
can prevent the PTO from conducting a reexamination.

    Accordingly, the PTO's initial denial of Callaway's request
to vacate the reexaminations was not arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law.

        2.    Collateral estoppel from the Delaware proceedings

18

Case 1:11-cv-00266-LMB-TCB  Document 41  Filed 07/27/11  Page 19 of 25 PageID# 4134

Callaway's second line of argument is that the conclusion of the Delaware court as to Acushnet's violating the settlement agreement collaterally estops the PTO from proceeding with the reexamination.  This entire line of argument fails for multiple reasons.

Collateral estoppel prevents "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." <u>Ramsay v. INS</u>, 14 F.3d 206, 210 (4th Cir. 1994), quoting <u>Virginia Hosp. Ass'n v. Baliles</u>, 830 F.2d 1308, 1311 (4th Cir. 1987).[6]  For the doctrine to apply, the party asserting it must establish:

(1) the issue precluded must be identical to one previously litigated;

(2) the issue must have been actually determined in the prior proceeding;

(3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;

(4) the prior judgment must be final and valid; and

(5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

_____

[6]In patent actions, collateral estoppel claims are analyzed "under the law of the regional circuit."  <u>Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.</u>, 617 F.3d 1296, 1311 (Fed. Cir. 2010).

19

Ramsay, 14 F.3d at 210.

Obviously, the issue before the PTO was not identical to
the issue before the Delaware federal district court, which
addressed only whether Acushnet had breached its agreement with
Callaway by requesting the reexamination.  See Callaway Golf Co.
v. Acushnet Co., 523 F. Supp. 2d 388, 405 (D. Del. 2007) (holding
that Acushnet "violated the Agreement by filing the inter partes
reexaminations to contest the validity of the Sullivan
patents.").  The Delaware court did not hold that the PTO was
precluded from conducting reexaminations.  In fact, the Delaware
court actually recognized the PTO's authority to proceed with the
reexaminations:

> The reexamination at issue having been filed, and a
> substantial new question of patentability recognized,
> the PTO was clearly within its jurisdiction to dismiss
> plaintiff's request to halt the proceedings. It does
> not follow, however, that defendant was not in breach
> when it filed its inter partes reexamination request in
> the first instance.

Id. at 405.  Because the PTO's decision to reexamine the Sullivan
patents is an entirely separate matter from the issue of whether
Acushnet breached its contract with Callaway by requesting
reexamination, there is not collateral estoppel effect.[7]

Callaway's collateral estoppel argument also fails because

---

[7]Even if the Delaware court barred Acushnet from any further
participation in the reexamination, which has not happened, the
PTO could continue the process as an ex parte reexamination,
which does not require the involvement of a third-party
requester.

the PTO was not a party to the Delaware litigation, and the PTO did not have a "full and fair opportunity" to litigate the breach of contract issue in Delaware.  Moreover, the Federal Circuit has held that a district court's rulings in patent infringement lawsuits do not bind the PTO's later reexamination of the same patents.  See In re Trans Tex. Holdings Corp., 498 F.3d 1290, 1298 (Fed. Cir. 2007), (affirming the PTO's refusal to apply a district court's claim construction to the PTO's later ex parte reexamination of the same patent, holding that "[i]ssue preclusion is not warranted in this case because the PTO was not a party to the earlier litigation"); Houston Atlas, Inc. v. Del Mar Scientific, Inc., 1982 U.S. Dist. LEXIS 10046 (N.D. Tex. June 16, 1982) (rejecting patent holder's argument that alleged infringer's breach of a consent decree by filing a request for an ex parte reexamination collaterally estopped the PTO from reexamining the patent, holding that "the Patent Office was not a party to the original proceeding and . . . the consent judgment is not binding on the Patent Office or the public which it represents").[8]

Lastly, the text of the inter partes reexamination statute

_____

    [8]Although both decisions involved ex parte reexaminations, Callaway has pointed to no material difference between ex parte and inter partes reexaminations that would require a different outcome in this case.  Similarly, Callaway has not cited any caselaw in which collateral estoppel has precluded the PTO from conducting inter partes reexaminations.

21

supports the conclusion that the PTO is not bound by general collateral estoppel principles.  The statute contains only a narrow collateral estoppel provision, limited to instances in which a party loses a challenge to patent validity in a civil action or an <u>inter partes</u> reexamination,

> then neither that party nor its privies may thereafter request an inter partes reexamination of any such patent claim on the basis of issues which that party or . its privies raised or could have raised in such civil action or inter partes reexamination proceeding, and an inter partes reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office, notwithstanding any other provision of this chapter[.]

35 U.S.C. § 317(b).  Under a statutory interpretation canon, <u>expressio unis est exclusio alterius</u>, "where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded." <u>Reyes-Gaona v. North Carolina Growers Ass'n</u>, 250 F.3d 861, 865 (4th Cir. 2001), Congress's failure to include a more general collateral estoppel provision supports the conclusion that Callaway's collateral estoppel has no statutory basis.

In addition to invoking collateral estoppel, Callaway tries to rely on section 2646 of the Manual of Patent Examining Procedure ("MPEP"), which allows the PTO to vacate an <u>inter partes</u> reexamination that is <u>ultra vires</u>, such as where there is "<u>no discretion</u> to grant a request for reexamination."   (emphasis in original).  Callaway's Mot. for Summ. J. at 25.  This argument

22

fails, however, because it relies on the unsupported assumption that the 1996 settlement agreement and the Delaware court's breach of contract ruling divest the PTO of any statutory authority to reexamine the Sullivan patents.  Once again, Callaway cites no caselaw or statutes that would lead to the conclusion that a breach of contract ruling against a third party divests the PTO of any discretion to reexamine patents.

     Moreover, Callaway's MPEP argument is undercut by the PTO's determination that neither the forum selection clause nor the Delaware court's ruling renders the PTO's decision to conduct the reexamination ultra vires.  An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation."  Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal citation and quotation marks omitted). At oral argument, counsel for Callaway implied that Auer is no longer good law, alluding to Justice Scalia's recent statement that he has "become increasingly doubtful" of Auer's validity. Talk Am., Inc. v. Mich. Bell Tel. Co., 2011 U.S. LEXIS 4375 (U.S. June 9, 2011) (Scalia, J., concurring); however, this argument ignores the majority's opinion, which applied Auer and stated that it has "reaffirmed" the rule.  Id., at *15.  Therefore, under Auer, we must defer to the PTO's decision that the reexamination is not ultra vires because the decision is neither plainly erroneous nor inconsistent with the agency's regulations.

23

It was perfectly reasonable for the PTO to conclude that a
court's finding that one private party breached a contract by
requesting reexamination did not divest the PTO of its ability to
reexamine the patent.  Therefore, under <u>Auer</u>, the Court will
defer to the PTO's interpretation of its regulations.

    In sum, Callaway has failed to demonstrate that the PTO's
denial of the petitions to vacate the <u>inter partes</u> reexaminations
were "arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law."  Therefore, Callaway's request for a
declaratory judgment and injunction under 5 U.S.C. § 706(2) will
be denied.

C. <u>Mandamus</u>

    Although Callaway also seeks a writ of mandamus enjoining
the PTO from conducting the reexaminations and requiring the PTO
to stay or suspend the reexaminations, it does not address
mandamus relief in its Motion for Summary Judgment.  Callaway's
reply brief only mentions mandamus briefly in a footnote, stating
that the relief is proper "because the PTO is required to vacate
proceedings over which it has no statutory authority."  Callaway
Reply at 17, n. 11.  Callaway cannot satisfy the requisite
elements for mandamus. Am. Brief at 27.  For a writ of mandamus
to issue, the plaintiff must establish: "(1) the plaintiff has a
clear right to relief; (2) the defendant has a clear duty to act;
and (3) there is no other adequate remedy available to

24

plaintiff." <u>Burandt v. Dudas</u>, 496 F. Supp. 2d 643, 653 (E.D. Va. 2007) (internal citations omitted).

Callaway has not demonstrated that it has a clear right to the relief that it seeks. Specifically, it has not pointed to a single statute or binding precedent that would require the PTO to vacate the <u>inter partes</u> reexaminations. Nor has Callaway established that the PTO has a clear duty to vacate the reexaminations. As discussed above, the PTO reasonably construed the settlement agreement and the Delaware court's decision as not precluding the PTO from conducting the reexaminations.

Finally, Callaway has adequate remedies through the APA. The PTO's refusal to vacate an <u>inter partes</u> reexamination is subject to judicial review. Moreover, Callaway may also seek judicial review of the PTO's decision to invalidate the Sullivan patents by appealing to the Federal Circuit under 35 U.S.C. §§ 141 and 315(a)(1). Accordingly, Callaway's mandamus claim fails.

### IV. Conclusion

For all of the above stated reasons, the Motion of Plaintiff Callaway Golf Company for Summary Judgment [Dkt. No. 10] will be denied and Defendants' Motion for Summary Judgment [Dkt. No. 22] will be granted by an Order to be issued with this Opinion.

Entered this $\underline{27}^{th}$ day of July, 2011.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

25